UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALI AQEEL, DWIGHT SEELEY, PAMELA SEELEY, LAUREL READINGER, LEVI BARTHOLOMEW, ARIJ ALI, and MALINA ALI, individually and on behalf of all other similarly situated<br><br>                    Plaintiffs,<br><br>  v.<br><br>LIBERTY INSURANCE CORPORATION, LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF INDIANA,<br>                       Defendants. | Civil Action No. 3:21-cv-00181<br><br>Judge Richardson<br><br>Magistrate Judge Newbern<br><br>JURY DEMAND |

### DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF AQEEL

Defendants reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Doc. 50) with five points showing why summary judgment should be granted.

1. **The evidence conclusively proves and it is uncontested that LIC did not "depreciate labor" on Aqeel's claim.**

The Tennessee Supreme Court has held that an insurance company may not depreciate the labor component of damaged property. *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170 (Tenn. 2019). Thus, only the materials portion of the costs to replace a ten year old roof may be depreciated in determining its value. Based upon *Lammert*, Plaintiff Ali Aqeel sued Liberty Insurance Corporation ("LIC") for breach of contract for allegedly depreciating "labor" costs. Not content to pursue just his own claim, nor limit it to his home state, he also sought to expand the putative class to residents of twelve other states.

The summary judgment record, however, conclusively establishes that LIC did not depreciate labor on Aqeel's claim. The adjuster who handled Aqeel's claim testified, following

**Defendants' Reply in Further Support of Their Motion for**
**Summary Judgment Against Plaintiff Aqeel**                                               1
Case 3:21-cv-00181   Document 55   Filed 07/16/21   Page 1 of 7 PageID #: 468

*Lammert*, "it is LIC's policy and practice not to depreciate labor on Tennessee property claims such as Aqeel's" and he followed that policy on Aqeel's claim. (Doc. 32-1 ¶ 7–8). He did <u>not</u> check the "Depreciate Non-Material," "Depreciate Removal," or "Depreciate Overhead and Profit" boxes in the Xactimate estimating software which Aqeel contends "will result in the withholding of labor from an ACV payment." (Doc. 32-1 ¶ 8; Doc. 1 ¶ 80).

Aqeel offers absolutely no evidence to the contrary. Instead, he concedes this point, suggesting it is "immaterial to [the] claims" he brought in his complaint. (Doc. 50 at 3). In any event, Rule 56 requires that summary judgment "shall" be granted as to Aqeel's labor depreciation breach of contract claim.

2. **The evidence conclusively proves that the parties resolved their dispute about "Steep and High Removal Costs" through appraisal and LIC timely paid such amounts.**

Aqeel's second, but separate, claim is that LIC breached the Policy by not paying Steep and High Removal Costs.[1] This claim is not based on the "depreciation" of labor as a component of a repair cost as in *Lammert*. Instead, Aqeel complains that LIC's initial repair estimate—which already included $512.54 to remove the damaged roof[2]—did not include an additional $263.23 of Steep and High Removal Costs when valuing the amount of loss. (Doc. 45-3).[3]

The evidence establishes that this dispute over "the value of [his] loss" was resolved through a contractual appraisal process which Aqeel invoked four months before filing this action.

---

[1] The term "Steep and High Removal Costs" refers to extra costs added to the cost of removing damaged steep and/or high roofs.
[2] This cost was not "depreciated." (Doc. 45-3 at 4 of 9 [line 1]).
[3] This alleged $263.23 of Steep and High Removal Costs is not reflected in LIC's initial estimate. (See Doc. 45-3). Rather, it comes solely from declarant Toby Jarell Johnson, who purports to "add" these costs to an undescribed document from which a partial "screen shot" is then supposedly taken. (Doc. 45-1 ¶ 25). Declarant Johnson does not profess to have any personal knowledge regarding LIC's handling of Aqeel's claim or the underlying facts. Thus, the Johnson declaration is not competent evidence of how LIC actually or should have estimated, adjusted, or paid Aqeel's claim. Fed. R. Civ. P. 56(c)(2).

**Defendants' Reply in Further Support of Their Motion for**
**Summary Judgment Against Plaintiff Aqeel** 2

(Doc. 51 ¶¶ 13–14).[4] Under Tennessee law, appraisal provisions are enforceable and "the parties are bound by the decision of the appraisers." *Thomas v. Standard Fire Ins. Co.*, No. E2015-01224-COA-R3-CV, 2016 WL 638559, at * 3, 6 (Tenn. Ct. App. 2016). The same holds true here. Aqeel and LIC appointed an appraiser who ultimately agreed on the loss amount. (Doc 45-5). That agreed loss amount included $367.08 for Steep and High Removal Costs ($100 more than what Aqeel claims here) in the final appraisal award. (*Id.* at 4 of 28 [lines 7 and 9]). And although the Policy provides that these costs were "payable 60 days after . . . a filing of an appraisal award" (Doc. 32-2 at 17 of 45 [¶ 10.c]), LIC paid them the same day as the award, 60 days *before* they were due. (Doc. 51 ¶¶ 19, 23–24). Thus, the evidence conclusively establishes that LIC actually *satisfied* its contractual obligations. Aqeel's breach claim, therefore, fails.[5] *Thomas*, 2016 WL 638559 at * 6.

Aqeel's suggestion that the appraisal is "immaterial" (Doc. 50 at 3) because his claims concern "contract interpretation" and "coverage," not the amount of loss, is meritless. There is no Policy text to interpret here, nor has coverage been denied. The claim was accepted; the issue was the amount of the loss, which is now resolved through the contractual process. And this argument completely conflicts with Aqeel's repeated allegations that LIC improperly calculated and "underpaid" insured losses. (*See, e.g.,* Doc. 1 ¶¶ 67, 73, 113, 115). Accordingly, summary judgment is appropriate.

3. **LIC's timely payment of all Steep and High Removal Costs bars any prejudgment interest claim.**

Having been paid all or more than he claims, Aqeel finally argues that he is owed

---

[4] Citations to Doc. 51 will be to the paragraphs from Plaintiff Aqeel's Response to Defendants' Statement of Undisputed Facts, not the Statement of Additional Material Facts.
[5] Aqeel's request for declaratory relief likewise fails because no substantial controversy exists between LIC and Aqeel regarding the Policy. *Cariaco v. B17 Holds., LLC*, No. 3:13-cv-401-TAV-HBG, 2014 WL 2208936, at *2–4 (E.D. Tenn. May 28, 2014).

**Defendants' Reply in Further Support of Their Motion for
Summary Judgment Against Plaintiff Aqeel**　　　　　　　　　　　　　3
Case 3:21-cv-00181   Document 55   Filed 07/16/21   Page 3 of 7 PageID #: 470

prejudgment interest "for the time period LIC improperly withheld steep and high removal labor from his ACV payment." (Doc. 50 at 19). This assertion is without merit because LIC did not breach the contract; it paid the additional Steep and High Removal Costs 60 days before they were "payable." (Doc. 45-5 [lines 7 and 9], Doc 51 ¶ 19, 23). LIC's compliance with the appraisal and loss payment provisions in the Policy negates any claim for prejudgment interest. *Thomas*, 2016 WL 638559 at *6 ("Prejudgment interest is not warranted.").

Additionally, and contrary to Aqeel's unsupported contention, LIC did not "withhold" any Steep and High Removal Costs on the ground that Aqeel must first incur those costs before they would be paid. There is no evidence that LIC ever took such a position. Rather, LIC's initial claims estimate—which both LIC and Aqeel included in the record (Docs. 32-3 and 45-3)—shows only that LIC did not include such additional removal costs when determining the "necessary" repair costs. As explained above, that determination was disputed, appraised, paid, and thus resolved through "binding" appraisal.

Finally, while Aqeel claims he was owed $263.23 in Steep and High Removal Costs (Doc. 50 at 2), LIC paid him $367.08, and did so well before the 60 day deadline to pay under the Policy. For each of these reasons, Aqeel has no claim for prejudgment interest.

4. **The $957.20 that Aqeel contends LIC owes does not relate to the "labor costs" that are the subject of this action.**

Aqeel's assertion that LIC still owes $957.20 "inclusive of the withheld labor charges" is refuted by the record and provides no basis to avoid summary judgment. (Doc. 50 at 2, 6, 15). To begin, Aqeel admits that LIC has already paid all the "labor charges to remove shingles from his property's steep and high roof" that that he "ultimately recouped all previously withheld labor costs after appraisal." (Doc. 50 at 21, 23). Because LIC did not "depreciate labor" and paid Aqeel

**Defendants' Reply in Further Support of Their Motion for**
**Summary Judgment Against Plaintiff Aqeel**     4
Case 3:21-cv-00181   Document 55   Filed 07/16/21   Page 4 of 7 PageID #: 471

more than he asserts here for Steep and High Removal Costs, there are no other "labor" related (or any other) claims in this lawsuit.

For completeness, the conclusive evidence shows this $957.20 figure does not include any "labor costs" which Aqeel has limited his claims to in this action. (Doc. 50 at 1). Rather, $575.63 of that amount concerns "recoverable depreciation" on *material* costs (not labor) and $381.57 is the cost for a dumpster that LIC agreed to pay if it became necessary during repairs. (Doc. 32-1 ¶¶ 6–8; Doc. 45-3 at 6 of 9; Doc. 51 ¶ 8).[6] Neither of these costs are sought in the complaint.

Further, as LIC explained in its July 20, 2020 payment letter and estimate, Aqeel is eligible to recover those non-labor amounts if he chooses to seek an RCV payment and timely submits documentation showing his *actual* cost of repairs. (Doc. 32-3 at 3, 9). But as Aqeel makes abundantly clear, he is "not contend[ing] LIC breached the RCV coverage terms." (Doc. 50 at 2, 8). Indeed, Aqeel makes no legal claim about these deductions from the RCV of his loss, nor does he assert or prove that he presented documentation to LIC to recover these non-labor amounts.

In sum, nothing about the purported $957.20 amount affects any of the claims before this Court. Summary judgment should be granted.

5. **Aqeel asserts no claims against Defendants LMPIC or Safeco.**

Finally, Aqeel concedes he "has asserted no breach of contract claims against either LMPIC or Safeco in the Complaint." (Doc. 50 at 8). Thus, along with LIC, LMPIC and Safeco are entitled to summary judgment. (Doc. 50 at 8).

## CONCLUSION

Defendants' Motion for Summary Judgment should be granted in its entirety.

---

[6] These items were properly deducted from the amount of Aqeel's loss when LIC made the initial ACV payment. (Doc. 32-3 at 9 of 16; Doc. 45-3 at 6 of 9).

Dated: July 16, 2021                                Respectfully submitted,

L. WEBB CAMPBELL II

*/s/ L. Webb Campbell II*
L. Webb Campbell II

**SHERRARD ROE VOIGT & HARBISON, PLC**
L. Webb Campbell II (No. 11238)
Lauren Z. Curry (No. 30123)
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
(615) 742-4537
(615) 742-4539 – Fax

**JACKSON WALKER LLP**
David T. Moran
Texas State Bar No. 14419400
*admitted pro hac vice*
Christopher A. Thompson
Texas State Bar No. 24003049
*admitted pro hac vice*
Maggie Burreson
Texas State Bar No. 24116150
*admitted pro hac vice*
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000
(214) 953-5822 – Fax

**ATTORNEYS FOR DEFENDANTS**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the following persons on the 16th day of July, 2021 via the Court's ECF system as follows:

J. Brandon McWherter (brandon@msb.law)
Erik D. Peterson (edp@austinmehr.com)
T. Joseph Snodgrass (jsnodgrass@larsonking.com)

By: */s/ L. Webb Campbell II*
L. Webb Campbell II